UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASEY KATLONG,<br><br>       Petitioner,<br><br>  v.<br><br>WILLIAM BARR, et al.,<br><br>       Respondents. | Case No. C20-0846-RSL-MAT<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel to obtain release from detention or a bond hearing. Currently before the Court is the Government's return memorandum and motion to dismiss (Dkt. 8; *see also* Dkt. 15), which Petitioner opposes (Dkt. 13). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

Petitioner, a native and citizen of the Republic of the Marshall Islands, was lawfully admitted to the United States in January 2014. (Dkt. 9 (Shields Decl.) ¶ 3; Dkt. 10 (Lambert Decl.), Ex. A.) In February 2017, Petitioner pled guilty in Oregon state court to two counts of felony Attempted Assault in the Second Degree Constituting Domestic Violence for assaulting his wife on two separate dates with a knife. (Lambert Decl., Ex. B at 8.) He was sentenced to 36 months in prison with three years of post-release supervision. (*Id.* at 2.)

On April 15, 2019, Petitioner was released from state prison into ICE custody. (Shields Decl. ¶ 5.) ICE served Petitioner with a Notice to Appear ("NTA"), charging him with removability pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(i) (conviction for a crime of moral turpitude) and 1227(a)(2)(A)(iii) (aggravated felony crime of violence). (*Id.*; Lambert Decl., Exs. C-D.) ICE also served Petitioner with a Notice of Custody Determination informing him that he would be detained pending a final administrative determination in his removal proceedings. (Lambert Decl., Ex. E.) Petitioner requested a custody redetermination by an immigration judge ("IJ") but later withdrew his request because he wanted additional time to gather evidence to support his request for release. (*Id.*, Ex. F; Shields Decl. ¶ 6.)

On July 17, 2019, the IJ ordered Petitioner removed to the Marshall Islands. (Lambert Decl., Ex. G.) The IJ found that Petitioner knowingly, voluntarily, and intelligently waived his right to apply for asylum and related relief, and determined that Petitioner was ineligible for any other form of relief from removal. (*Id.*, Exs. G-H; Shields Decl. ¶ 7.) On August 19, 2019, Petitioner late-filed a *pro se* appeal with the Board of Immigration Appeals ("BIA"), which remained pending as of August 2020.[1]

---

[1] The parties have not informed the Court whether the BIA has ruled since briefing in this case was completed.

Petitioner appeared at bond hearings on May 13, 2020, and July 1, 2020. (Lambert Decl., Exs. I-J.) At each, the IJ found that he did not have jurisdiction to release Petitioner on bond because Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). (*Id.*) Petitioner did not appeal either decision to the BIA. (Shields Decl. ¶¶ 11, 13.)

### III.  DISCUSSION

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens who are in removal proceedings.[2] Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 138 S. Ct. 830, 846-48 (2018). Section 1226(c) includes any noncitizen who "is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the [noncitizen] has been sentenced to a term of imprisonment of at least 1 year." 8 U.S.C. § 1226(c)(1)(C). Because Petitioner falls into this category, his detention is statutorily mandated until his removal proceedings have concluded, and he is not statutorily eligible for an individualized determination as to whether he should be released on bond. *See Jennings*, 138 S. Ct. at 842, 847.

Petitioner argues that his prolonged detention violates his due process rights and that he is entitled to a bond hearing where the Government must bear the burden of justifying his continued detention by clear and convincing evidence. The Government counters that his continued

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to the Department of Homeland Security ("DHS"), while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 3

mandatory detention is reasonable. For the reasons discussed below, the Court concludes that Petitioner should be afforded a bond hearing that complies with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), which include placing the burden on the Government to justify continued detention by clear and convincing evidence.

A.      Legal Background

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c). The Supreme Court explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens convicted of certain crimes and held that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018). Overwhelmingly, district courts that have considered the constitutionality of prolonged mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some

point—violate the right to due process.'" *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *R. & R. adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, No. C18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 923-24 (W.D. Wash. 2020) (Martinez, C.J.) (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

B. <u>Test to Determine Reasonableness of Prolonged Detention Under § 1226(c)</u>

The undersigned has previously adopted a "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019 WL 5968089 at *9. Those factors include:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and pre-*Jennings* circuit court cases holding, as a matter of constitutional avoidance, that § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by*

*Jennings*, 138 S. Ct. 830); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).[3] The Court discusses each factor below, ultimately concluding that they weigh in favor of granting Petitioner a bond hearing.

1. *Length of Detention to Date*

The length of detention is the most important factor. *E.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months."). Petitioner has been held in ICE custody since April 2019, over 18 months. This factor weighs strongly in favor of granting him a bond hearing.

2. *Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. As Petitioner argues, after the BIA issues a decision, he will have the opportunity to file a petition for review with the

---

[3] Both parties also analyze Petitioner's detention under the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at 1106 (citing *Mathews*, 424 U.S. at 334). For the reasons explained by Judge Robart in *Banda*, the Court declines to apply the *Mathews* test in this case. *See id.* at 1106-07.

Court of Appeals for the Ninth Circuit, which may not be resolved for over two years. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 10/26/20). Accordingly, this factor weighs in Petitioner's favor.

3. *Criminal History*

Third and fourth, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. Petitioner was sentenced to 36 months in prison for attempted assault in the second degree against his wife, and he was released after approximately 29 months in prison. He has been in immigration detention for over 18 months. It appears possible but not certain that Petitioner's pre-removal order detention will match or exceed the length of time he spent in prison. At this point, however, the Court concludes that these factors weigh against a finding that his detention is unreasonable.

4. *Conditions of Detention*

Next, the Court considers the conditions at the NWIPC where Petitioner is detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source omitted). Petitioner contends that the conditions at the NWIPC are similar to those in many prisons and jails, citing an article by the University of Washington Center for Human Rights about solitary confinement and medical care at the NWIPC, another news article regarding a hunger strike that occurred at the facility in March 2020, and an order by the Honorable Ricardo S. Martinez releasing a NWIPC detainee during the COVID-19 pandemic, *Pimentel-Estrada v. Barr*, 458 F.

REPORT AND RECOMMENDATION - 7

Supp. 3d 1226 (W.D. Wash. 2020). (Dkt. 13 at 5.) The Government responds that this evidence is not probative because Petitioner has not alleged that he has been kept in solitary confinement, received inadequate medical care, or is similarly situated to the detainee who was released due to COVID-19. (Dkt. 15 at 5.)

Having carefully considered the evidence submitted, the Court agrees with Petitioner. The evidence establishes at least the following. The NWIPC is a private detention facility run by The GEO Group, Inc. ("GEO"), an independent contractor with ICE that provides the facility, management, personnel, and services for 24-hour supervision of the detainees in ICE custody at the NWIPC. The NWIPC has the capacity to house 1,575 detainees and historically often operates near capacity. There are 21 housing units, one of which includes an Administrative Segregation Unit and a Disciplinary Management Unit. Detainees are housed according to classification level, and detainees of different classification levels may not ordinarily be housed together in the same housing unit. Male and female detainees are housed in separate units. Most movement within the facility is unit-specific, and detainees are allowed access to a small outdoor area for one hour a day. These conditions are "similar . . . to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (determining that immigration detainees were held in circumstances similar to many penal institutions); *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 220 n.9 (3d Cir. 2018) ("[T]he reality [is] that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures.") (quoted source omitted). Accordingly, this factor weighs in Petitioner's favor.

5. *Delays in Removal Proceedings*

The sixth and seventh factors involve consideration of "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*,

2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 665 (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [noncitizen]."). Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019). With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*).

The parties do not contend that there was any unreasonable delay during Petitioner's removal proceedings before the IJ. Petitioner's appeal to the BIA, however, has been pending for a very long time. Although there is no evidence this is the result of "intentional action on behalf

REPORT AND RECOMMENDATION - 9

of government officials, this delay is attributable to the Government." *Martinez*, 2019 WL 5968089, at *10. Accordingly, the sixth and seventh factors weigh in Petitioner's favor.

6. *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

The Government argues that this factor weighs in its favor because although Petitioner has administratively appealed his waiver of relief from removal as being without consent, he clearly informed the IJ that he does not fear returning to the Marshall Islands, making relief unlikely. (Dkt. 8 at 10.) Petitioner counters that counsel cannot assess the likelihood that removal proceedings will result in a final order of removal, so this factor should be considered neutral. (Dkt. 13 at 6.) During the removal proceedings, Petitioner did not assert any defenses to removal, which weighs in the Government's favor. However, he challenges this waiver on appeal. The Court declines to weigh in on his likelihood of success on appeal and therefore finds this factor neutral.

7. *Weighing the Factors*

As discussed above, five factors weigh in Petitioner's favor, two factors weigh in the Government's favor, and one factor is neutral. The Court thus concludes that Petitioner's prolonged mandatory detention without a bond hearing has become unreasonable and that he is entitled to a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See, e.g.*, *Banda*, F. Supp. 3d at 1120-21 (requiring immigration judge to apply the procedural requirements of *Singh*); *Djelassi*, 434 F. Supp. 3d at 923-24 (same); *Martinez*, 2019 WL 5968089, at *11 (same and collecting cases); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (holding that *Jennings* did not undercut the constitutional due process holding in *Singh*).

## IV. CONCLUSION

The Court recommends that both the Government's motion to dismiss (Dkt. 8) and Petitioner's habeas petition be GRANTED in part and DENIED in part. Specifically, Petitioner's request for release should be DENIED, but he should be GRANTED a bond hearing that comports with the procedural requirements of *Singh* within 30 days of an order on this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be

REPORT AND RECOMMENDATION - 11

1  ready for consideration by the District Judge on **November 20, 2020**.

2      Dated this <u>30th</u> day of October, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12